## INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellant–Respondent,

v.

### Irene CULLEY, Appellee–Petitioner.

#### No. 49A02–0110–CV–670.

Court of Appeals of Indiana.

June 11, 2002.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellant.

Peter J. Rusthoven, J. Michael Grubbs, Jody L. DeFord, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Irene Culley moved into a nursing home in January of 2000 and three months later used some of her money to purchase funeral trusts. The trusts were to provide burial funds for Culley's two adult children and their spouses. Two days later she applied for Medicaid. Her application was approved, but the State, through its Family and Social Services Administration ("FSSA") imposed a "transfer penalty" on the ground that the purchase indicated Culley's intent to transfer property for the purpose of rendering Culley eligible for assistance. She was determined to be ineligible for Medicaid benefits for seven months. The trial court reversed the agency action and ordered the FSSA to reimburse Culley for the benefits she was denied.

The FSSA raises two issues on appeal, which we restate as:

1.) whether the trial court properly determined the use of Culley's assets to purchase burial spaces for her children and their spouses did not subject her to a transfer penalty; and

2.) whether the trial court erred in ordering affirmative relief rather than remanding the cause to the agency for further proceedings.

We affirm the trial court's determination that Culley was not subject to the transfer penalty and remand to the FSSA.

## FACTS

Culley became a resident of the Parkview Nursing Center on January 27, 2000. On March 29, 2000, she used two certificates of deposit and two savings accounts to purchase four life insurance policies from Forethought Life Insurance Company. The policies were then irrevocably assigned to the Pierre Funeral Home and four funeral trusts were created. The beneficiaries of the trusts were Culley's adult son and daughter and their spouses.

Two days later, on March 31, 2000, Culley applied for Medicaid assistance. Her application was approved on May 3, 2000, but the FSSA imposed a transfer penalty for the period from March 2000 through September 2000.

## DISCUSSION AND DECISION

### Standard of Review

On judicial review of an administrative adjudication, a court is limited to consideration of whether there is substantial evidence supporting the agency's decision, and whether the agency action was arbitrary, capricious, an abuse of discretion, or in excess of its statutory authority. *Ind. Dept. of Envtl. Mgt. v. Conard*, 614 N.E.2d 916, 919 (Ind.1993). The court is not bound by the agency's interpretation of law and is free to decide any legal question that arises out of an administrative action. *Indiana Family and Social Services Admin. v. Methodist Hosp. of Indiana*, 669 N.E.2d 186, 188 (Ind.Ct.App.1996). Interpretation of the meaning and effect of an agency regulation is a question of law properly subject to *de novo* analysis on judicial review. *See Indiana Dept. of Pub. Welfare v. Payne*, 622 N.E.2d 461, 465 (Ind.1993), *reh'g denied* (determination of the status of state legislation that required interpretation of an administrative rule held a question of law subject to *de novo* review). In setting aside an unlawful

agency decision, a reviewing court may compel the agency to take action that has been "unreasonably delayed or unlawfully withheld;" otherwise, it is to remand the case to the agency for further proceedings. Ind.Code § 4–21.5–5–15.

### 1. *Applicability of Transfer Penalty* *The Medicaid Rules*

Ind. Admin. Code tit. 405, r. 2–3–1.1 provides in pertinent part that if a Medicaid applicant who is an inpatient at a nursing facility disposes of assets for less than fair market value during a period of thirty-six months before she is institutionalized and has applied for medical assistance (the "look-back date"), the applicant is ineligible for Medicaid for a certain period that is determined based on the value of the transferred assets.[1] The code lists certain types of property that are exempt from consideration, including burial spaces, *id.* § 2–3–15(c)(7), and "property required to be excluded by federal statute or regulation." *Id.* § (c).

 A Medicaid applicant may, in some circumstances, use her assets as did Culley to purchase burial spaces for her family members without being subject to a transfer penalty. The FSSA regulations

explicitly exempt "burial spaces." The Indiana Client Eligibility System program manual ("ICES")[2] § 2615.20.20.20 provides that "A burial space or an agreement which represents the purchase of a burial space held for the burial of the individual, his or her spouse, or any other member of his or her immediate family is an exempt resource, regardless of value." A "valid irrevocable Indiana funeral trust" is also exempt regardless of its value. *Id.* § 2615.20.15. The "immediate family" exemption applies to "an individual's ... adult children ... and the spouses of those individuals." 20 C.F.R. § 416.1231(a)(4).[3] Culley's assets were used to purchase burial spaces for her adult children and their spouses by means of irrevocable funeral trusts.[4] That, Culley asserts, "is the beginning and end of the uncomplicated legal analysis that governs the result[.]" (Br. of Appellee at 10.) We agree.

The FSSA's argument is premised in large part on its characterization of the transfer as one of Culley's cash resources to her children, who then chose to use the cash to purchase the burial trusts for themselves. *See, e.g.,* Br. of Appellant at 4 (transfer penalty properly imposed "where a Medicaid participant provided a substan-

---

1. Culley used $24,289.86 to purchase the policies.

2. The manual "incorporates policies and procedures concerning ... health coverage under the traditional Medicaid program." ICES § 1005.00.00.

3. The federal Social Security Administration regulations on Supplemental Security Income ("SSI") are applicable to Medicaid determinations in Indiana. *Payne,* 622 N.E.2d at 466. Culley notes that a key basis for the FSSA decision was the erroneous conclusion that the federal regulation did not apply. In his Conclusions of Law, the administrative law judge stated "All of the legal basis referred to by [Culley's] representative, except for the 405 IAC cite, refers to [the SSI regula-

tions]. These Social Security regulations have no controlling authority over Indiana's Medicaid Program." (App. at 132.) The FSSA concedes on appeal that the federal regulations apply.

4. The FSSA also argues the transaction was not exempt because 405 IAC 2–3–1.1(c) imposes a penalty for disposing of assets for "less than fair market value," and Culley "did not receive ... any actual value for the cash transferred to the insurance or trust companies." (Br. of Appellant at 15.) The FSSA's premise is inconsistent with the federal regulations and ICES provision that explicitly exempt the purchase of burial services for the applicant's immediate family, and we therefore decline to apply that test to this case.

tial amount of cash to her children (and their spouses), and the children and the spouses of the children then used the cash to fund irrevocable funeral trust agreements benefiting only themselves.") *And see id.* at 8 (the authorities cited by the trial court "do not establish that *a transfer of cash to an applicant's adult children* becomes a transfer of exempt assets merely because *the children purchase funeral trusts for themselves* with the cash.") (emphasis supplied). Because the property transferred was Culley's cash and not an exempt asset in the form of a funeral trust, the FSSA asserts, the transfer penalty should apply: "the trusts were not exempt resources of Irene Culley because they were not Irene Culley's resources. Irene Culley's resource was cash." *Id.* at 10.

■ The FSSA's premise is supported neither by the record nor the agency's own findings.[5] The FSSA asserts in its brief that "the transfer made by Irene Culley *to her children and their spouses* included assets subject to the transfer penalty[.]" (Br. of Appellant at 7) (emphasis supplied). The page of the Appendix to which the FSSA directs us as support for that statement does not address whether Culley made the transfer "to her children." However, the FSSA explicitly states in its Notice of Hearing Decision that Culley's certificates of deposit and bank accounts "*were transferred to the Forethought Life Insurance Company* to fund irrevocable

funeral agreements with Pierre Funeral home. The *beneficiaries of this transfer* were [Culley's children and their spouses]." (App. at 138) (emphasis supplied). The FSSA directs us to no evidence in the record or findings in the agency proceedings that directly support its premise that the transfer was one of cash from Culley to her children and that the children then used the cash to purchase the funeral agreements.[6] We accordingly find that the agency abused its discretion in determining that Culley's purchase of funeral trusts for her children and their spouses subjected her to a transfer penalty.

2. *The Trial Court Order of Affirmative Relief*

■ The FSSA next argues the trial court erred in directing the FSSA to reimburse Culley rather than remanding the case to the agency for further proceedings. When it is appropriate for a reviewing court to set aside an agency action, it may remand the case to the agency for further proceedings or "[c]ompel agency action that has been unreasonably delayed or unlawfully withheld." Ind.Code § 4-21.5-5-15. "The express intent of this part of the statute is to limit the reviewing court's authority to remand the case to the administrative agency for further proceedings after a proper determination that the agency's decision was contrary to law. If upon remand the agency unlawfully withholds or unreasonably delays the redeter-

---

5. Culley's Petition for Judicial Review alleged Culley "had used funds from two certificates of deposit and two bank accounts to purchase [the policies for her children and their spouses]" and that the ownership of the policies was "irrevocably assigned to the Pierre Funeral Home which immediately transferred ownership of the policies to the [funeral trust]." (App. at 21.) The FSSA's answer admitted the truth of both statements. (App. at 38.)

6. The FSSA states Culley "*cashed in* two certificates of deposit and two savings accounts, *receiving cash* in the amount of $25,762.22." (Br. of Appellant at 3) (emphasis supplied). The pages of the record to which the State refers us do not indicate Culley "cashed in" the certificates or "received cash." Rather, they indicate only that the accounts were "closed out and cash withdrawn on March 29, 2000," (App. at 64), which was the day *after* the policies in question were purchased. (App. at 97).

mination of the case, then the trial court may compel agency action by direct order. Otherwise the reviewing court does not have power to compel agency action as part of the initial review function. It may only remand the cause for rehearing." *Stansberry v. Howard,* 758 N.E.2d 540, 550 n. 11 (Ind.Ct.App.2001), *reh'g denied, quoting Indiana Alcoholic Beverage Comm'n v. Johnson,* 158 Ind.App. 467, 476–77, 303 N.E.2d 64, 69 (1973).

Here, although the trial court had the authority to order affirmative relief, we remand this to the FSSA for a determination as to how the $24,289.86 formerly subject to the transfer penalty should be distributed.

We accordingly affirm the trial court decision that Culley was not subject to the transfer penalty and remand to the FSSA for further proceedings consistent with this opinion.

BAKER, J., and KIRSCH, J., concur.